**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.   16-cv-03079-MSK-MJW

ESTATE OF NATE CARRIGAN,
JOHN CARRIGAN,
MELISSA CARRIGAN, and
KOLBY MARTIN

      Plaintiff,

v.

PARK COUNTY SHERIFF'S OFFICE,
SHERIFF FRED WEGENER, in his official and individual capacity, and
MARK HANCOCK, in his official and individual capacity

      Defendant,

_____

**SCHEDULING ORDER**

_____

**1. DATE OF CONFERENCE
AND APPEARANCES OF COUNSEL AND PRO SE PARTIES**

      The Scheduling/Planning Conference is to be held on February 23, 2017 at 9:00

a.m.  The following counsel shall attend:

Reid J. Elkus
Donald C. Sisson
Elkus & Sisson, P.C.
501 S. Cherry Street, Suite #920
Denver, CO 80246
*Attorney for Plaintiffs*

Timothy P. Schimberg
Fowler, Schimberg, Flanagan & McLetchie, P.C.
1640 Grant Street, Suite 300
Denver, CO 80203
*Attorney for Defendants*

## 2. STATEMENT OF JURISDICTION

This actions arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and is brought pursuant to 42 U.S.C. §§ 1983 and 1988.  The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b) as all the events described occurred in Colorado.

## 3. STATEMENT OF CLAIMS AND DEFENSES

A.    *Plaintiffs:*

Kolby Martin and Nate Carrigan were both Sheriff Deputies with the Park County Sheriff's Office.  On February 24, 2016, Deputies Martin and Carrigan were part of a six man operation that was assembled to participate in a high risk eviction of Park County resident, Martin Wirth.  Captain Mark Hancock of the Park County Sheriff's Office was SWAT Commander that was charged with tactical command of the eviction of Mr. Wirth. In that capacity, and during briefing, Captain Hancock devised a tactical plan to evict Mr. Wirth from his residence.  A key part of the plan was that if Mr. Wirth went back into his residence the officers would treat the action as a barricade and not enter the residence. This was communicated to the officers as well as Sheriff Wegener at briefing.  At all times relevant, the Defendants were aware that Mr. Wirth posed a safety risk to law enforcement based on his history of overt threats to shoot and kill law enforcement officers.

After briefing, Captain Hancock and the eviction team went to Mr. Wirth's residence to effectuate the eviction.  Captain Hancock and Deputy Carrigan spoke to Mr. Wirth and advised him that they were there to evict him from the premises.  Mr. Wirth responded:

"your're not even going to give me time to move my stuff out".  As which point Mr. Wirth went and retreated back into his residence.  Instead of withdrawing from the residence given the threat and risk of harm that was known to all officers present, Captain Hancock ordered Deputy Carrigan to breach the residence by kicking the front door open.

After kicking the resident door open, Deputy Martin and Deputy Threlkel entered the Wirth home at which point Mr. Wirth began firing his weapon at the officers.  Deputy Martin sustained multiple gunshot wounds while Deputy Carrigan sustained a single shot to his chest.  Deputy Martin sustained eight gunshot entry wounds to the following areas: (1) supra-pubic area; (2) right groin; (3) right mid-thigh; (4) right posterior thigh; (5) right buttock; (6) left posterior thigh; and (7-8) two in the left anterior thigh.  The bullet to the left thigh caused an open femur fracture.  Deputy Carrigan's injury resulted in his death.

Deputy Martin and the Estate of Deputy Carrigan have brought two (2) claims for relief: (1) 42 U.S.C. § 1983 – Fourteenth Amendment Violation under a danger creation theory and (2) 42 U.S.C. § 1983 – deliberate indifference training and supervision.

B.      *Defendants:*

On February 24, 2016, Fred Wegener was the elected Sheriff of Park County. Mark Hancock served in the Sheriff's Office as Captain. Pursuant to a Court Order, a Notice of Eviction was properly placed at a residence being occupied by Martin Wirth. Pursuant to the Order and proper notice, plans were made to evict Mr. Wirth. That effort took place on February 24, 2016. In effectuating the eviction, Mr. Wirth, without knowledge of law enforcement that were involved, armed himself and, upon entry of Sheriff's Office personnel, fired his weapon(s) at Sheriff's personnel. Wirth's criminal acts of violence resulted in the tragic death of Deputy Nate Carrigan,

as well as injuries sustained by Deputy Martin and Captain Mark Hancock. Sheriff Wegener, who had no personal participation in the entry of the residence, and Captain Hancock, were acting within the course and scope of their employment with Park County Sheriff's Office at all times.

Park County Sheriff's Office, Fred Wegener and Mark Hancock recognize the tragic loss of Nate Carrigan while he was on duty and engaged in the performance of his responsibilities as a deputy of the Park County Sheriff's Office. The defendants recognize the loss to his parents. The defendants recognize the injury sustained by Kolby Martin, and others, while on duty and engaged in the performance of responsibilities as deputies of the Park County Sheriff's Office. At the same time, Park County Sheriff's Office, Sheriff Fred Wegener and Mark Hancock deny that there is a legal basis for any federal civil rights claim to be mounted against them or anyone else derivative of Deputy Carrigan's death and or Deputy Martin's injuries. In addition, these defendants deny several allegations set forth by the plaintiffs in the initial operative pleading in this case, the factual basis for many of the statements found therein as either inaccurate or unknown to the defendants in any direct manner.

The Park County Sheriff's Office, Sheriff Fred Wegener and Mark Hancock have also asserted multiple defenses and affirmative defenses respecting the claims attempted against them by the plaintiffs, including that plaintiffs' Complaint fails to state a claim upon which relief can be granted; that the plaintiffs are not entitled to the relief being sought or claimed in the Complaint under any of the legal theories asserted; that Sheriff Wegener and Captain Hancock's actions and conduct were objectively reasonable under the totality of circumstances; that individual defendants acting under

color of state law are entitled to absolute immunity; quasi-judicial immunity, qualified immunity, or all such immunities, as well as common law and statutory immunities; with respect to some or all of the plaintiffs' claims against individual defendants, such may be barred, in whole or in part, by the lack of personal participation; that upon information and belief, the plaintiffs may have failed to mitigate damages; that some or all of plaintiffs' injuries and damages were not proximately caused by, or related to, any act or omission by these defendants; that to the extent the individual defendants acted under the color of state law with respect to the plaintiffs, each individual defendant is entitled to qualified immunity due to the absence of a claimed right that has been clearly established by Supreme Court or 10th Circuit decision that is on point; all or a part of plaintiffs' claims never achieved the level of a constitutional violation sufficient to state a claim under 42 U.S.C.§ 1983 or the Fourteenth Amendment of the United States Constitution; in addition, no claims pursuant to 42 U.S.C.§ 1983 may be grounded in any theory of *respondeat superior* or vicarious liability respecting any defendant; defendants acted in accordance with all common law, statutory and constitutional obligations, and without any intent to cause any or all of the plaintiffs' harm; the individual defendants lack the requisite intent to establish any claim against either of them in this matter; that claims in the Complaint fail to establish any basis for concluding that any defendant acted or failed to act in a willful and wanton manner; that individual defendants possess or possessed a reasonably objective good faith belief in the lawfulness of all of his conduct; that plaintiffs' injuries and damages were proximately caused by the acts or omissions of Martin Wirth; that plaintiffs' damages were

proximately caused by the acts or omissions of third parties over whom these defendants possessed no ability or opportunity to control or right of control; that to any extent, any action or inaction on the part of the defendants was, in any way involved in any harm caused to plaintiffs' decedent or plaintiffs, by anyone, any action or inaction by these defendants was privileged under applicable law, to include the privilege of law enforcement to use reasonable physical force to effect an arrest, and to defend themselves and others; that in all respects, the defendants behaved in accordance with applicable legal authority in their actions or inactions associated with the plaintiffs, negating any claim of liability asserted by plaintiffs against them; that some or all of the claims attempted by plaintiff may be duplicative of one another and cannot be the basis for any duplicative recovery; that plaintiffs cannot establish through a preponderance of proof that any custom, practice or policy of the Sheriff's Office was a moving force behind any alleged constitutional or other injury or damage asserted by plaintiffs; plaintiffs cannot establish through a preponderance of proof that any training or alleged lack thereof, of the Sheriff's Office, was a moving force behind any alleged constitutional or any other injury or damage asserted by plaintiffs; that the defendants did not breach any obligation or responsibility to anyone associated with any constitutional right of any party in relation to this matter; that the defendants acted in accordance with all contractual and legal obligations; actions taken by the defendants pertinent to this matter were the result of a bona fide, good faith judgment; plaintiffs' claims are barred by the doctrine of judgmental immunity; that Sheriff Wegener and Captain Mark Hancock were properly and reasonably exercising their public duties pursuant to statute

or vested police powers; that the defendants exercised prudent and objective reasonable care with regard to their actions relevant to plaintiffs' claims; that defendants are not liable for any punitive damages pursuant to state or federal law in connection with this matter, and all such claims are barred as a matter of law; that no Sheriff's Office nor individual defendants in their official capacity are liable for exemplary damages pursuant to Colorado and federal law; that any claim for punitive or exemplary damages against individual defendants in their individual capacities are barred, limited, reduced, or in the alternative, unconstitutional in violation of the rights of the defendants under the due process clause of the Fifth and Fourteenth Amendment to the United States Constitution; that upon information and belief, plaintiffs' alleged damages are subject to offset by virtue of amounts received from other sources; that upon information and belief, the plaintiffs may not be the real party in interest, in whole or in part, to pursue all or a part of their damage claims, that upon information and belief, some or part of plaintiffs' claims may be barred, limited, or controlled by the Workers Compensation Act of Colorado, C.R.S. § 8-40-101 *et. seq.*

## 4. UNDISPUTED FACTS

The following facts are undisputed:

a. On February 24, 2016, Deputy Kolby Martin and Deputy Nate Carrigan were Sheriff Deputies with the Park County Sheriff's Office.

b. On February 24, 2016, the Park County Sheriff's Office attempted to evict Martin Wirth.

c. Deputy Martin received multiple gunshot wounds by Martin Wirth.

d.  Deputy Nate Carrigan received a gunshot wound from Martin Wirth.  Deputy Carrigan died on February 24, 2016.

e.   Captain Mark Hancock received gunshots wounds by Martin Wirth.

## 5. COMPUTATION OF DAMAGES

Plaintiffs seeks the following relief, in amounts to be determined at trial and to be further articulated as discovery progresses and putative experts provide opinions:

(1) _Plaintiffs Martin and Estate of Carrigan_: All economic losses allowed by law including but not limited to lost past, and future, wages and benefits.  Plaintiffs will be engaging an economist to make the precise calculation which will be disclosed upon completion.

(2) _Plaintiffs Martin and Estate of Carrigan_: Punitive damages allowed by law and in an amount to be determined at trial;

(3) _Plaintiffs Martin and Estate of Carrigan:_ Emotional pain and suffering.

(4) _Plaintiff Martin_: future medical treatment.  Plaintiff will be engaging a vocational expert to opine on this precise calculation along with an econcomist.

(5)  _Plaintiffs Martin and Estate of Carrigan_: Attorney's fees and costs;

(6)  _Plaintiffs Martin and Estate of Carrigan_: Pre- and post-judgment interest at the lawful rate;

(7)  Any other relief as allowed by law; and

(8)  Any further relief that this court deems just and proper.

Defendants will maintain contemporaneous time entries for legal services rendered in the defense of this matter and will reserve the right to assert a claim for attorney's fees and costs as appropriate.

### 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a.     Date of Rule 26(f) meeting:

The Rule 26(f) meeting was held at the Office of Elkus & Sisson, P.C. with Plaintiff's counsel Reid Elkus and Defense counsel Timothy Schimberg.  The conference occurred on February 16, 2017.

b.     Names of each participant and party he/she represented:

Reid J. Elkus
Elkus & Sisson, P.C.
501 S. Cherry Street, Suite #920
Denver, CO 80246
*Attorney for Plaintiffs*

Timothy P. Schimberg
Fowler, Schimberg, Flanagan & McLetchie, P.C.
1640 Grant Street, Suite 300
Denver, CO 80203
*Attorney for Defendants*

c.     Statement as to when Rule 26(a)(1) disclosures were made or will be made.

Rule 26(a)(1) disclosures will be made on or before February 23, 2017.

d.     Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1):

None.

e.     Statement concerning any agreements to conduct informal discovery:

The parties have not reached any agreements to conduct any specific informal discovery in this matter.  However, the parties have agreed that if an issued appropriate to informal discovery arises during the discovery period in this case counsel for the parties will work together to address and appropriately handle such an issue.

f.       Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system:

The parties agree to the use of a unified exhibit numbering system.  No other such agreements have been made.

g.       Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

The parties do not anticipate that their claims or defenses will involve significant electronically stored information or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

Pursuant to Fed. R. Evid. 502(d), the production of a document protected by a privilege or the work-product doctrine, whether inadvertent or otherwise, shall not constitute a waiver of such privilege or protection in this case or any other Federal or State proceeding.  If any document or ESI produced in discovery is subject to a claim of privilege or work-product protection, the party making the claim shall notify any party receiving the document or ESI of the claim and the basis for it.  After being so notified, the receiving party must promptly return, sequester, or destroy the specified document or information and any copies of it; shall not use or disclose the document or ESI until the

claim is resolved; and shall take reasonable steps to retrieve any copies of the document or ESI from any other person to whom the receiving party disclosed the document or ESI, provided, however, that the receiving party may submit the document or ESI to the Court under seal for a determination of the claim.  The producing party must preserve the document or ESI at issue until the claim is resolved.

h.      Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

The parties have discussed the use of a mediator for early dispute resolution.

## 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

a.      Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

The parties have agreed to modify the presumptive limits in discovery as follows:

1) Depositions – 20 depositions per side.

2) Interrogatories –  45 interrogatories per side.

3) Request for Production – 45 requests per side.

4) Request for Admission – 45 per side.

b.      Limitations which any party proposes on the length of depositions.

Seven (7) hours per deponent.  Fed. R. Civ. P. 30(d) shall govern.

c.      Limitations which any party proposes on the number of requests for production and/or requests for admission.

Please refer to section 8(a) above.

d.      Other Planning or Discovery Orders

No opposed discovery motions are to be filed with the Court until the parties comply with D.C.COLO.LCivR 7.1A. If the parties are unable to reach agreement on a discovery issue after conferring, they shall arrange a telephone hearing with Magistrate Judge Mix regarding the issue. Both of these steps must be completed before any contested discovery motions are filed with the Court.

Defendant intends to file a motion for a protective order to protect confidential information produced in discovery.

## 9. CASE PLAN AND SCHEDULE

a.      Deadline for Joinder of Parties and Amendment of Pleadings:

May 9, 2017.

b.      Discovery Cut-off:

October 23, 2017.

c.      Dispositive Motion Deadline:

November 23, 2017.

d.      Expert Witness Disclosure:

1.      The parties shall identify anticipated fields of expert testimony, if any.

*Plaintiff:* Plaintiff anticipates the following fields of expert testimony: (1) economist; (2) vocational expert; (3) police tactical expert; and (4) medical experts.

*Defendant:*  Defendant anticipates the following fields of expert testimony:

2.      Limitations which the parties propose on the use or number of expert witnesses.

The parties agree to limit the number of experts to 4 per side without leave of the Court, exclusive of nonretained experts.

3.      The parties shall designate all experts and provide opposing counsel and any *pro se* parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before July 24, 2017.

4.      The parties shall designate all rebuttal experts and provide opposing counsel and any *pro se* party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before August 24, 2017.

e.      Identification of Persons to Be Deposed:

The parties are presently determining their discovery needs.  Accordingly, the schedule listed below is not exhaustive and is not necessarily presented in the order in which the parties will conduct deposition.  Further, the dates and times of depositions are tentative and have not yet been determined or noticed.  Finally, the parties wish to retain the opportunity to reschedule depositions or take other depositions as may be suggested by discovery.  By including this list in this Scheduling Order, the parties are not stipulating that the depositions of the listed individuals is appropriate, and the parties reserve the right to seek a protective order concerning the deposition of any listed individual.

| Name of Deponent | Date of Deposition | Time of Deposition | Expected Length of Deposition |
|---|---|---|---|
| Kolby Martin | TBD | TBD | 7 hours |
| Melissa Carrigan | TBD | TBD | 7 hours |
| Fred Wegener | TBD | TBD | 7 hours |
| Mark Hancock | TBD | TBD | 7 hours |
| David Leffler | TBD | TBD | 7 hours |
| Rich Gabrish | TBD | TBD | 7 hours |
| DJ Hannigan | TBD | TBD | 7 hours |
| Jeremy Lowrance | TBD | TBD | 7 hours |
| Travis Threlkel | TBD | TBD | 7 hours |
| Scott Crowder | TBD | TBD | 7 hours |
| John Carrigan | TBD | TBD | 7 hours |
|  |  |  |  |

f.      Deadline for Interrogatories:

        33 days prior to the discovery cutoff date.

g.      Deadline for Requests for Production of Documents and/or Admissions:

        33 days prior to the discovery cutoff date.

## 10. DATES FOR FURTHER CONFERENCES

a.      Status conferences will be held in this case at the following dates and times:

b.      A final pretrial conference will be held in this case on _____

at_____.  A Final Pretrial Order shall be prepared by the parties and

submitted to the court no later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

a.      Identify those discovery or scheduling issues, if any, on which counsel after a

good faith effort, were unable to reach an agreement.

        None.

b.      Anticipated length of trial and whether trial is to the court or jury.

        The parties anticipate a five-day jury trial.

c.      Identify pretrial proceedings, if any, that the parties believe may be more

efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch

Street, Colorado Springs, Colorado; Wayne Aspinall U.S. Courthouse/Federal Building,

402 Rood Avenue, Grand Junction, Colorado; or the U.S. Courthouse/Federal

Building,103 Sheppard Drive, Durango, Colorado.

        None.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

        The parties filing motions for extension of time or continuances must comply with

D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served

upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

In addition to filing an appropriate notice with the clerk's office, a *pro se* party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to the case.

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to the case.

## 13. AMENDMENTS TO SCHEDULING ORDER

This Scheduling Order may be altered or amended only upon a showing of good cause.

DATED this _____ day of _____, 2017.

BY THE COURT:

_____

United States Magistrate Judge

APPROVED:

*/s/ Reid J. Elkus*
Reid J. Elkus
Elkus & Sisson, P.C.
501 S. Cherry Street, Suite #920
Denver, CO 80246
*Attorney for Plaintiff*

 */s/ Timothy P. Schimberg*
Timothy P. Schimberg
Fowler, Schimberg, Flanagan & McLetchie, P.C.
1640 Grant Street, Suite 300
Denver, CO 80203
*Attorney for Defendants*