Case No. 1:16-cv-03079-MSK-NRN   Document 56-2   filed 03/29/18   USDC Colorado   pg 1 of 10

MARK HANCOCK - 8/28/2017
Estate of Nate Carrigan, et al. v. Park County Sheriff's Office, et al.

Page 23

2  **County, how often would you take training courses or**

3  **schooling in regards to breaching as a SWAT leader?**

4       A.   To breaching?

5       **Q.   Yeah.**

6       A.   Really, just the training that I provided

7  to the agency and participating in that once a month.

8       **Q.   So you would do training on breaching once**

9  **a month?**

10      A.   No, not always breaching, but we would set

11 up a schedule for a year, and in that year, there

12 would be breaching training.

13      **Q.   And how would you get the information to**

14 **provide to your staff on SWAT training?**

15      A.   On SWAT -- how would I get the --

16 basically, on experience and training that I had had,

17 and drawing from their experience, we would all sit

18 down and make the schedule a year in advance.  And so

19 we'd figure out who had the experience and what types

20 of training, and they would put that on throughout the

21 year.  So if it was medical, those guys would put it

22 on.  If it was breaching or shooting, I would do it.

Case No. 1:16-cv-03079-MSK-NRN   Document 56-2   filed 03/29/18   USDC Colorado   pg 2 of 10

MARK HANCOCK - 8/28/2017
Estate of Nate Carrigan, et al. v. Park County Sheriff's Office, et al.

Page 34

16             With respect to your SWAT command, or while
17   you were SWAT commander, how often did Park County
18   deploy its SWAT while you were its commander?
19        A.   I don't know exact numbers.
20        Q.   Well, give an approximation, if you know.
21        A.   I would say close to a hundred times.

Case No. 1:16-cv-03079-MSK-NRN   Document 56-2   filed 03/29/18   USDC Colorado   pg 3 of 10

MARK HANCOCK - 8/28/2017
Estate of Nate Carrigan, et al. v. Park County Sheriff's Office, et al.

Page 40

1    Q.    And you would agree that a subordinate
2    officer, where they may disagree with an order from a
3    superior officer, as long as it's not unethical,
4    immoral or illegal, that subordinate officer has to
5    follow that superior officer's order; is that correct?
6    A.    That is not --
7          MR. SCHIMBERG:  Objection to form.
8          MR. ELKUS:  Hold on.  Give us a chance to
9    jump in.
10         Same.
11   Q.    Go ahead.
12   A.    That is not correct.
13   Q.    Why do you say that that's not correct?
14   A.    Every officer, especially on SWAT, is --
15   was trained in our agency to be a safety officer.  And
16   especially in SWAT, rank kind of goes out the door
17   when you're actually doing a mission.  Anyone could
18   state that they don't feel right about something, and
19   it'd be discussed, or they could change -- possibly
20   change the way you're doing something.
21         So as to your question, they would have to
22   absolutely follow an order, I would disagree with
23   that.

19        Q.    Is it your testimony that when you have an
20   OIC who's giving orders in a SWAT operation that the
21   subordinate officer can ignore the order of an OIC?
22   Can they do that?
23        A.    You can't ignore the order, no.
24        Q.    And if the OIC says, I appreciate -- you
25   know, you could object to it, but if I'm telling you

Case No. 1:16-cv-03079-MSK-NRN   Document 56-2   filed 03/29/18   USDC Colorado   pg 5 of 10

MARK HANCOCK - 8/28/2017
Estate of Nate Carrigan, et al. v. Park County Sheriff's Office, et al.

Page 42

1   this is the order, your subordinate better follow

2   that; is that right?

3       A.   Well, I would ask why you were -- you know,

4   have concerns with it.

5       Q.   Okay.  But --

6       A.   And they'd be discussed.

7       Q.   Set aside questioning the order, if you're

8   the OIC and you say "Do it," the subordinate better do

9   it, right?

10      A.   Well, or have a good reason why not to.

11      Q.   Okay.  But at the end of the day, as the

12  OIC, you are the individual that has the final say of

13  what's going to happen on an operation, fair enough?

14      A.   That's fair.

15      Q.   And if the subordinate, whatever reasons

16  they give, whether they object to it, question it,

17  say, "Do you know what, Captain?  I don't agree with

18  it," but at the end of the day, you say, "This is what

19  we're going to do.  I appreciate what your objection

20  is, but at the end of the day, this is what we are

21  going to do.  I'm ordering you to do it," you would

22  expect your subordinate to do it, correct?

23      A.   If he disagreed with the order?

24      Q.   If you give a direct order for a

25  subordinate officer to do something, it is your

Case No. 1:16-cv-03079-MSK-NRN   Document 56-2   filed 03/29/18   USDC Colorado   pg 6 of 10

MARK HANCOCK - 8/28/2017
Estate of Nate Carrigan, et al. v. Park County Sheriff's Office, et al.

Page 43

1    expectation that they're going to do it, correct?

2         A.    That is my expectation, yes.

```
19        A.   Nate Carrigan, D.J. Hannigan, Deputy
20   Lowrance, Travis Threlkel, Kolby Martin.  Dave Leffler
21   was there for the start of it, and Sheriff Wegener was
22   there for some of it.
23        Q.   Do you know why Sheriff Wegener was there?
24        A.   I think he was stopping by the substation
25   on his way out of town to make sure that, you know, I
```

1  had enough personnel to do what I wanted to do that

2  day.

21      A.   I've already told you what I had heard

22   about him, the incident in Jefferson County and the --

23   I don't know if I told you, the prior eviction, that

24   he had been evicted in 2014, I believe.

25      Q.   **So you didn't tell me that.  So what did**

Case No. 1:16-cv-03079-MSK-NRN   Document 56-2   filed 03/29/18   USDC Colorado   pg 10 of 10

MARK HANCOCK - 8/28/2017
Estate of Nate Carrigan, et al. v. Park County Sheriff's Office, et al.

Page 223

1  you know about the prior eviction of Mr. Wirth?

2          A.   That he had been evicted in 2014,

3  peacefully.  And again, this is after the event, so,