## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.   16-cv-03079-MSK-MJW

ESTATE OF NATE CARRIGAN,
MELISSA CARRIGAN, as Personal Representative
of the Estate of Nate Carrigan,
KOLBY MARTIN, and
TRAVIS THRELKEL

      Plaintiff,

v.

PARK COUNTY SHERIFF'S OFFICE,
SHERIFF FRED WEGENER, in his official and individual capacity, and
MARK HANCOCK, in his official and individual capacity

      Defendant.

---

### DEFENDANTS PARK COUNTY SHERIFF'S OFFICE AND SHERIFF FRED WEGENER'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

---

The Park County Sheriff's Office ("PCSO") and Sheriff Fred Wegener (collectively, "Defendants") by and through counsel, Timothy P. Schimberg, of Fowler, Schimberg, Flanagan & McLetchie, P.C., move for summary judgment pursuant to Fed. R. Civ. P. 56(c) on all claims in Plaintiffs' First Amended Complaint and Jury Demand [Doc. #32].

## I.    <u>CONFERRAL CERTIFICATION</u>

Pursuant to D.C.COLO.LCivR 7.1A, defense counsel has discussed this motion and the grounds for it.  Plaintiffs' counsel opposes the relief requested.

## I.      INTRODUCTION

A tragic and violent encounter between law enforcement officers of the Park County Sheriff's Office and a citizen, Martin Wirth, occurred on February 24, 2016.  Officers attempted to evict Martin Wirth pursuant to a lawful court order.  Martin Wirth ambushed and opened fire upon the officers when they entered the residence.  Martin Wirth shot and killed Corporal Nate Carrigan.  He shot and injured Plaintiff Kolby Martin and Defendant Mark Hancock.  Plaintiff Travis Threlkel entered the residence, but did not sustain physical injuries.  Wirth was shot and died at the scene.

Sheriff Fred Wegener was not a significant participant in these events.  He had no role in planning the eviction.  At a pre-eviction briefing the morning of February 24, 2016, Sheriff Wegener stopped by for a few minutes while on his way to a meeting in Denver.  He did not participate in developing tactical plans at this meeting or at any time.  He left the pre-eviction briefing to drive to Denver, but eventually turned around to go to the eviction to see if he could assist.  When he arrived at the scene, he saw the officers standing by the door of the residence in a stack formation.  The officer in charge, Captain Hancock, radioed that he was "going to go through the door."  Sheriff Wegener, who remained by his vehicle in the driveway, suggested that the officers attempt to contact Wirth at the door.  Captain Hancock advised he had tried that, and again announced he was going to enter.  Sheriff Wegener acknowledged the decision on the radio, saying, "Copy, breaching the door."  Within seconds of entering the residence, Martin Wirth opened fire upon the officers.

This case presents a totally unique set of circumstances that has not before been addressed by the Tenth Circuit or the U.S. Supreme Court under the lens of the "danger creation" theory.

"Danger creation" is a narrow exception to the rule that state actors are not liable for acts of private violence. *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 921 (10th Cir. 2012) (citations omitted). The danger creation theory has never been applied in this circuit or by the U.S. Supreme Court to a situation in which a peace officer has been placed in danger as part of his law enforcement duties. This case presents the issue of whether a sheriff, who arrives late to the scene of a rapidly developing and tactically dynamic civil eviction, violates the Fourteenth Amendment substantive Due Process rights of the officers directed by a senior tactical officer to enter the premises, where the sheriff acknowledges and does not object to the senior officer's decision to enter. The issue is particularized by the facts that the sheriff had no personal hands-on role in planning or preparation of the eviction, and that the senior tactical officer in charge at the scene promptly advise forcing an entry of the premises.

Danger is an inherent and inescapable part of a law enforcement officer's job. An order from a law enforcement supervisor that potentially places a peace officer at risk of injury at the hands of a third party actor, even if erroneous in hindsight, cannot form the basis of a substantive Due Process claim if law enforcement agencies are to perform their essential functions. Law enforcement officers encounter risks to their personal safety and lives every day as part of their regular duties. There is no guarantee afforded by the Fourteenth Amendment to safety in the workplace. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 126 (1992). The particularized facts in this case that would describe the contours of such an alleged right have not previously been addressed in this circuit.

## II.     DEFENDANT WEGENER'S AND PCSO'S SUMMARY OF FACTS [1]

### Chronological Summary of Facts

1.      Plaintiffs were acting in the line of duty as law enforcement officers of the Park County Sheriff's Office in carrying out the eviction of Martin Wirth on February 24, 2016.  *See* **Ex. A (Dep. Trans. Kolby Martin)**, 304:22-305:1. The eviction was carried out pursuant to a lawful court order.  **Ex. B (Court Order – Writ of Restitution)**.

2.      Captain Mark Hancock—a SWAT commander and PCSO's most experienced tactical officer—was in charge of developing and deploying the tactical operations of the eviction. **Ex. C (Dep. Trans. Mark Hancock)** at 90:9-18, 92:23-25; **Ex. D (Dep. Trans. Fred Wegener)** at 157:16-158:7, 200:4-9.

3.      To prepare for the eviction, Captain Hancock led a briefing at the PCSO Bailey substation with everyone involved – Plaintiffs, Deputy Lowrance, Detective D.J. Hannigan, and Deputy Dave Leffler.  Ex. A, 131:23-132:1; Ex. C, 138:20-24].

4.      The team assembled had significant SWAT experience – Captain Hancock was the PCSO SWAT Commander, Deputy Martin was a PCSO SWAT team leader, and Deputy Threlkel and Lowrance were members of the PCSO SWAT team.  **Ex. E (Dep. Trans. Travis Threlkel)**, 60:19-61:1; Ex. A, 65:20-23, 145:9-146:5; Ex. C, 20:15-22.]

5.      Captain Hancock asked the deputies whether they believed the PCSO SWAT team

---

[1] Defendants recognize the Court's statement that a separate summary of the facts is not necessary. Due to the many details that are essential for a full and accurate picture of the underlying events, and because the qualified immunity analysis requires a specific factual review, a summary of facts is presented here for the aid of the Court.  Material, undisputed, or admitted facts, and corresponding citations, are subsequently presented in the Motion under each identified element, pursuant to the Court's Civil Practice Standard 7.6.2(c)(1)(C).

should perform the eviction.  Ex. E, 67:21-68:20.  The majority voted against elevating the eviction to a SWAT call-out, Ex. E, 68:20-70:17, despite discussion of the removal of Mr. Wirth turning into a "shootout at the O.K. Corral" situation, **Ex. A,** 140:19-24.

6.     Sheriff Wegener attended the pre-eviction briefing for only "five, ten minutes" while on his way to Denver for a meeting.  **Ex. C** at 137:19-138:2; Ex. D, 110:13-19, 111:9-14; **Ex. E,** 174:7-16.  He did not substantively participate in the briefing.  *See id.*; **Ex. A**, 132:9-18; **Ex. E** at 174:7-17, 175:15-21.  Sheriff Wegener left the pre-eviction briefing and headed to Denver.  **Ex. D** at 113:7-14.

7.     Sheriff Wegener did not participate in planning the eviction.  **Ex. A** at 132:9-18; **Ex. D**, 124:19-24, 125:10-12; **Ex. E**, 175:15-21.

8.     Sheriff Wegener was not involved in making a tactical plan.  **Ex. A**, at 132:9-18; **Ex. C**, 216:16-217:8; **Ex. D**, 124:8-125:12; **Ex. E**, at 175:15-21.

9.     Sheriff Wegener did not participate in the deployment of the officers.  *Id.*  Captain Hancock and the other officers did not expect him to participate in the eviction.  **Ex. C** at 221:6-10; **Ex. E** at 174:7-16, 179:23-180:4.

10.    Sheriff Wegener arrived at the site after the eviction action was well underway.  *See* **Ex. F (Dispatch Recordings)**, 15:21-22 (Sheriff Wegener announcing his arrival).  When he arrived, he saw that officers were already gathered and stacked by the front door of the residence.  **Ex. A D**, 193:17-21.

11.    Prior to Sheriff Wegener's arrival, officers had observed Wirth come out onto the deck, interacted him, and watched him return indoors—none of which Sheriff Wegener had the benefit of observing or evaluating.  *See* **Ex. F** at 14:25-15:1, 15:21-22; **Ex. D** at 228:6-229:4.

Sheriff Wegener had no information regarding Wirth's interactions with the officers, did not have the opportunity to assess Wirth's demeanor, observe Wirth's responses to officers' commands, or hear what was being said through the door between Wirth and the officers after Wirth had returned inside.  *Id.*

12.     Captain Hancock and Corporal Carrigan spoke with Wirth while he was on the deck.  **Ex. C**, 224:20-226:15.]

13.     After his arrival, Sheriff Wegener's listened to radio transmissions on the Ops 5 radio channel, remaining by his vehicle at a distance of 50 to 75 yards away from the house with an obstructed view.  **Ex. D** at 125:10-12, 194:5-13, 204:10-18; 228:6-229:4.

14.     Defendant Wegener did not assume tactical command upon his arrival.  **Ex. A** at 128:6-10; **Ex. C** at 90:9-18; 139:8-10, 245:7-11; **Ex. D** at 199:24-200:9, 239:17-24; **Ex. E** at 156:24-157:8, 216:21-25.  Plaintiffs understood that Captain Hancock was the officer in charge. **Ex. A** at 135:1-11; **Ex. E** at 156:24-157:8, 216:21-25.

15.     The transcript of radio transmissions and the Plaintiffs' deposition testimony establish that Sheriff Wegener did not give the order to breach.  **Ex. A** at 216:5-217:6 (no order to breach from Sheriff Wegener); **Ex. E** at 216:14-22, 225:8-22 (same); **Ex. F**, at 17:11-13.

16.     Captain Hancock issued the order to "go through the door," and Sheriff Wegener acknowledged the decision by radioing, "Copy, breaching the door."  **Ex. A**, 216:5-217:3; **Ex. C**, 260:7-14; **Ex. F**, at 16:9, 17:11-13; *see* **Ex. E**, 216:14-22, 225:8-22.

17.     In law enforcement radio communications, "Copy" is a standard response to acknowledge understanding of the preceding communication, not a grant of permission.  *See* **Ex. A** at 216:19-217:6; **Ex. E** at 225:8-14.  The officers involved in the eviction said "copy" on Ops 5

a total of nine times before entering the residence.  *See* **Ex. F** at 6:13, 6:19, 7:18, 8:1, 9:5, 10:11, 12:7, 14:6, 15:17.

18.     Martin Wirth opened fire upon the officers immediately after they entered the residence.  **Ex. F**, 17:11- ~~18~~ 17:18.

Officer Training

19.     All PCSO officers are offered training in various law enforcement subjects once a month.  **Ex. C** at 23:8-21.  Training on "breaching" was offered at least once a year.  *Id.* at 23:10-12.  "Breaching" is a patrol tactic that virtually every patrol officer is trained to do.  *Id.* at 38:16-22.

20.     Sheriff Wegener's most tactically experienced and trained officers were staffing the eviction.  Captain Hancock was a SWAT commander and part of PCSO's command staff.  **Ex. C** at 20:20-22:4, 29:14-21; **Ex. D** at 172:4-7.  He had more SWAT training than anyone else at the eviction site, having been a trained member of the SWAT team for approximately eighteen years and a trained SWAT commander for approximately ten years.  *See* **Ex. C** at 20:20-22:4.

21.     Plaintiffs and Deputy Jeremy Lowrance, who were assigned to enter the residence and were "stacked" at the door, were also trained SWAT officers.  *See* **Ex. A** at 145:9-146:5.  Plaintiff Kolby Martin was SWAT-trained and a SWAT team leader.  *Id.* at 279:25-280:7; **Ex. C** at 143:11-15; **Ex. D** at 315:14-16.  He assisted in developing and providing training for PCSO officers, including entries into occupied structures.  **Ex. A** at 254:3-14.  He continued to receive additional SWAT-related training through Park County.  *Id.* at 71:22-72:18; 279:25-280:9.

22.     Plaintiff Travis Threlkel was also SWAT trained, having completed over one hundred hours of training to be on the SWAT team.  **Ex. E** at 60:19-61:25.

23.     Corporal Carrigan had served with the Sheriff's Office for many years.  **Ex. A** at 146:2-5.  He had posted the eviction notice on the property, and had played a role in scheduling and organizing the eviction.  **Ex. C** at 100:8-25; **Ex. E** at 154:24-155:2.

24.     Deputy Jeremy Lowrance, who also stacked at the front door as part of the entry team behind Travis Threlkel, was a SWAT team member, with an extensive military background. **Ex. A** at 145:9-11; **Ex. C**, 215:10-16; **Ex. E** at 64:21-65:2, 216:15-16.

25.     Captain Hancock chose himself, Martin, Threlkel, and Carrigan to be the breach and entry officers specifically because they were the "more experienced officers."  **Ex. C** at 144:16-145:5.

26.     These Defendants adopt and incorporate the Chronological Summary of Facts ("CSOF") set forth in Defendant Mark Hancock's Motion for Summary Judgment.

### III.   CLAIMS AND DEFENSES UPON WHICH JUDGMENT IS SOUGHT

Defendants Sheriff Wegener and the Park County Sheriff's Office ("PCSO") seek summary judgment on all claims against them pursuant to Fed. R. Civ. P. 56(c).

**A.    Defendant Sheriff Wegener, in his Individual Capacity, is Entitled to the Qualified Immunity Defense.**

1.   **Burden of Proof and Elements:**

Plaintiffs bear the "heavy two-part burden" of proving: (1) Sheriff Wegener's actions violated a constitutional or statutory right; and (2) the constitutional right that was allegedly violated was clearly established at the time of the conduct at issue.  *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).  The Court is free in its discretion to decide which prong to address first in light of the particular circumstances of the case.  *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

2.  **Elements that Plaintiffs Cannot Prove:**

Sheriff Wegener is entitled to qualified immunity because Plaintiffs cannot satisfy either prong of their "heavy two-part burden."

### a.  The Alleged Rights are not Clearly Established.

The Fourteenth Amendment substantive Due Process Clause does not apply to the facts of this case.  It is a well-established principle that government employees do not have a substantive Due Process right in a "safe working environment."  *Collins*, 503 U.S. at 126.  In *Collins*, the Court rejected the plaintiff's argument that the Constitution "imposes a duty on [a government employer] to provide its employees with minimal levels of safety and security in the workplace."  *Id.*; *see also Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995); *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (allowing a risk to persist in the workplace is not shocking to the degree that violates substantive Due Process).  Plaintiffs understand the inherent and often unpredictable risks and dangers of their profession.  *See* **Ex. G (Dep. Trans. Melissa Carrigan)** at 69:24-70:2; **Ex. A** at 258:19-259:4; **Ex. E** at 138:14-24.  Plaintiffs attempt to bring their claims within the realm of substantive Due Process protection, but U.S. Supreme Court and Tenth Circuit precedents have rejected this approach.  Only conduct that is conscience shocking, in a constitutional sense, can support a substantive Due Process claim.  *See Collins*, 503 U.S. at 128.

The alleged Fourteenth Amendment due process right is not clearly established given the unique and particular facts and circumstances of this case.  The "clearly established" prong of the qualified immunity test is an exacting standard.  *City and Cnty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015).  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every

reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). "[E]xisting precedent must have placed the statutory or constitutional question 'beyond debate.'" *Id.* The United States Supreme Court and Tenth Circuit have repeatedly directed that "clearly established law" may not be defined "at a high level of generality," but "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S. Ct. at 308 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) and *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)); *see also White v. Pauly*, 137 S. Ct. 548, 552 (2017) ("As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case"); *Estate of Reat v. Rodriguez*, 824 F.3d 960, 965 (10th Cir. 2016). "The dispositive question is 'whether the violative nature of the *particular conduct* is clearly established.'" *Aldaba*, 844 F.3d at 877 (quoting *Mullenix*, 136 S. Ct. at 308).

To prove that their alleged Fourteenth Amendment Due Process rights were "clearly established," the constitutional violation must be "obvious," or Plaintiffs must identify a case where "an officer acting under similar circumstances as [Sheriff Wegener] was held to have violated" a plaintiff's Fourteenth Amendment substantive Due Process rights. *See White*, 137 S. Ct. at 552. Unpublished decisions are not persuasive grounds for demonstrating a clearly established right. *See Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007) ("An unpublished opinion, moreover, even if the facts were closer, provides little support for the notion that the law is clearly established on this point."). A "unique set of facts and circumstances" is an "important indication" that a defendant did not violate a clearly established right. *White*, 137 S. Ct. at 552.

The alleged substantive Due Process rights were not "clearly established" on February 24,

2016 because the facts and circumstances of this case are entirely unique, and no Supreme Court or Tenth Circuit decision has addressed them.  *See* Def. Summary of Facts ("SOF"); *see also* Def. Hancock's CSOF.  Counsel has reviewed the applicable law and found no existing precedent that would have put Defendant Wegener on notice that, upon arriving late to the scene of a dynamic and ongoing eviction, acknowledging his most experienced officer's decision to breach the premises of a potentially hostile evictee would constitute a violation of Plaintiffs' Fourteenth Amendment substantive Due Process rights—particularly where Sheriff Wegener had no role in developing the tactical plan.  *White*, 137 S. Ct. at 551.  No existing precedent, as is required, has been found that puts this constitutional question beyond debate in this unique context.  *Aldaba*, 844 F.3d at 877 (quoting *al-Kidd*, 563 U.S. at 741).  No precedent establishes that Sheriff Wegener, arriving late to a rapidly developing eviction operation, was required by the Due Process Clause to "second-guess the earlier steps already taken by his . . . fellow officers."  *See White*, 137 S. Ct. at 552.  Nor is there a U.S. Supreme Court or Tenth Circuit decision that applies the "danger creation theory" to facts remotely similar to those encountered by Sheriff Wegener at the eviction.

In *White*, the U.S. Supreme Court reversed the lower courts and held that the defendant, Officer White, was entitled to qualified immunity because it was not "clearly established" that Officer White, arriving late to an ongoing investigation at a residence, while crouching for cover from possible gunfire behind a stone wall, was required to warn the assailant to drop his weapon before firing shots in return.  *Id.* at 551.  In finding the law was not "clearly established" under those circumstances, the Court reversed the lower court specifically for failing "to identify a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment."  *Id.* at 552.  Here, the absence of any decision that is "particularized" to the

facts of Sheriff Wegener's minimal role and presence at the eviction, his encountering a dynamic situation previously assessed and handled by experienced tactical officers, leads to the same conclusion here.

There is no U.S. Supreme Court or Tenth Circuit precedent in which an officer acting under remotely similar circumstances as Sheriff Wegener was held to have violated the Fourteenth Amendment. Sheriff Wegener was not involved in planning the eviction. Def. ¶ SOF. He was not involved in tactical preparations. Def. SOF ¶ 8. Nor did he participate in the initial deployment of the eviction. Def. SOF ¶ 10. Sheriff Wegener arrived to the eviction site after it was well underway, and after officers were already gathered up by the front door of the residence. Def. ~~SOF ¶ 11~~ *Id.* Sheriff Wegener did not see Martin Wirth, and never had an opportunity to assess his demeanor and behavior. Sheriff Wegener's participation was limited to listening to radio transmissions on the Ops 5 radio channel, remaining by his vehicle at a distance 50 to 75 yards away from the house, and his acknowledgement of Captain Hancock's decision to enter the residence by radioing, "Copy, breaching the door." Def. SOF ¶ ~~14~~ 13. The acknowledgement came after Sheriff Wegener arrived and saw a dynamic formation of officers stacked and prepared to enter the residence, and heard Captain Hancock stating, "We're going to go." *See* SOF ¶¶ ~~11, 14~~ 10, 13; *cf.* Def. Hancock's CSOF, ¶ **Ex. F**, 16:9, 17:11-12. No reasonable officer in Sheriff Wegener's position would have understood that the Fourteenth Amendment *required* him to prevent, or attempt to prevent, the entry. *See e.g. Estate of Reat v. Rodriguez*, 824 F.3d 960, 965 (10th Cir. 2016) ("Though the elements of the state-created danger test are clearly established, it also must be clear to which fact scenarios and government actors we apply the test, and what types of conduct are 'conscience shocking' under the sixth factor" of the state-created danger exception).

In *Reat*, the Tenth Circuit held that a 911 operator, who instructed a caller to go to a location where the caller and other victims were subsequently attacked, was entitled to qualified immunity. The court found the facts in that case—to include the title, role, and conduct of the defendant—were so distinct, that "[n]o reasonable 911 operator could have known that [his] actions would have resulted in liability under the Fourteenth Amendment." *Id.* at 967. Similarly, no prior case has analyzed or applied the danger creation exception to a sheriff or other law enforcement officer facing circumstances like those presented to Sheriff Wegener at the eviction. Nor is there a case on point holding that allowing a law enforcement officer to be sent into a risky situation in the line of duty constitutes a denial of the officer's substantive Due Process rights.

Plaintiffs' First Amended Complaint [Doc. #32] alleges that Plaintiffs each had a "clearly established substantive due process constitutional right under the Fourteenth Amendment to life, liberty, and bodily integrity." *See e.g.* Am. Compl. [Doc. #32] at ¶¶ 53-55. This description is at the "high level of generality" that precedent clearly holds is insufficient to define a constitutional right as "clearly established." *See White*, 137 S. Ct. at 551. Because no Supreme Court or Tenth Circuit case has ruled upon the constitutionality of facts akin to the Wirth eviction and Sheriff Wegener's minimal role in the event, Sheriff Wegener had no "fair and clear warning of what the Constitution requires." *See al-Kidd*, 563 U.S. 731, 746 (2011). Plaintiffs do not get to "cherry-pick" aspects of opinions that merely give "colorable support" to the proposition that the unconstitutionality of Sheriff Wegener's role was clearly established. *Id.* at 744. Rather, Plaintiffs <u>must</u> identify a case that is "particularized" to the facts of this case. *White*, 137 S. Ct. at 552. If the rule were not so, Plaintiffs "would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability by alleging violation of extremely abstract rights." *Id.*

Plaintiffs are unable to meet the second prong of their "heavy two-part burden."

### i. The right is not clearly established in the context of Plaintiffs' alleged "failure-to-train" claim.

Plaintiffs assert a claim against Sheriff Wegener in his individual capacity for a deliberately indifferent failure to train or supervise. Plaintiffs cannot overcome the "clearly established" prong of Sheriff Wegener's qualified immunity defense on this claim. Plaintiffs' vague allegations describe Plaintiffs' Fourteenth Amendment right to training and supervision only at the most generalized level. *See id.* ¶¶ 78, 80-81. These allegations suffer from the lack of specificity proscribed in *White*, 137 S. Ct. at 552. There is no evidence of constitutionally deficient training or supervision. Plaintiffs did not have a "clearly established" Due Process right to be shielded from Captain Hancock's order to breach the residence during the eviction. To the extent Sheriff Wegener's radioed acknowledgement, "Copy, breaching the door" could be construed as "supervision," no identifiable law establishes that a single law enforcement radio communication acknowledging a tactical commander's order constitutes a Fourteenth Amendment violation. **Ex. F** at 17:13. No case law existing at the time of the eviction would have put Sheriff Wegener on notice that he was constitutionally required to provide whatever vague and unspecified additional training and supervision may have been necessary to speculatively prevent the unanticipated harm inflicted by a private actor during a civil eviction. A government employer's "failure to train," and similar decisions concerning the allocation of limited resources, is not conscience shocking "in a constitutional sense," even where those decisions may create certain risks. *Collins*, 503 U.S. at 128; *Uhlrig*, 64 F.3d at 576. Plaintiffs' do not have a clearly established constitutional right to vague and unspecific law enforcement training that is so expansive so as to cover and prescribe conduct for every possible risk officers may face in the line of duty.

**b.   There is No Constitutional Violation by Sheriff Wegener.**

"The 'ultimate' standard for determining whether there has been a substantive due process violation is 'whether the challenged government action shocks the conscience of federal judges.'" *Moore*, 438 F.3d at 1040 (quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002)).   A plaintiff "must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Id.* (citation omitted).   "'Even knowingly permitting unreasonable risks to continue does not necessarily rise to the level of conscience shocking.'" *Id.* (citation omitted).

The protection of Fourteenth Amendment substantive Due Process does not extend to providing a guarantee of safe outcomes in the workplace. *Collins*, 503 U.S. at 126.   "Neither the text nor the history of the Due Process Clause" supports a claim that a "governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." *Id.*   Nor is a governmental employer's "alleged failure to train its employees, or to warn them about known risks of harm" an omission that can be characterized as "arbitrary, or conscience shocking, in a constitutional sense." *Id.* at 128.

The Tenth Circuit followed *Collins* in *Moore v. Guthrie*, holding that a police officer who was injured when a bullet flew up underneath his riot helmet during a training exercise did not have a cognizable claim for a violation of the Fourteenth Amendment based upon an alleged right to work in a safe environment.  438 F.3d at 1043.   The plaintiff alleged the police chief's decision not to purchase more protective riot gear, as recommended by the manufacturer of the liquid-filled training bullets used in the exercise, violated the plaintiff's Fourteenth Amendment right to "bodily integrity." *Id.* at 1039.   While emphasizing the plaintiff "cannot be said to have a 'right to bodily

integrity in a safe work environment,'" the Tenth Circuit went a step further by holding that the failure to provide adequate safety equipment was not conscience shocking. *Id.* at 1041 ("While we do not wish to understate [p]laintiff's injury, it was the result of allowing a risk, perhaps not even an unreasonable one, to persist in the workplace."). In the same way, Plaintiffs cannot claim the protection of Fourteenth Amendment substantive Due Process for injuries arising out of the eviction, which they performed pursuant to their law enforcement duties.

A second consideration is that individual liability under § 1983 must be premised upon the defendant's personal participation in the allegedly unconstitutional conduct. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). As discussed more fully below in Section B, Plaintiffs cannot establish that Defendant Wegener's non-participatory role and limited individual conduct rose to a constitutional rights violation. Plaintiffs are unable to demonstrate that Sheriff Wegener's conduct put Plaintiffs at a substantial risk of serious harm, or that Sheriff Wegener's single act in radioing, "Copy, breaching the door," was reckless or shocks the conscience. *See* **Ex. F**, at 17:11-13. Sheriff Wegener did not violate Plaintiffs' Fourteenth Amendment Due Process rights by this single statement. Additionally, as discussed at greater length in Section D, Plaintiffs fail to demonstrate how Sheriff Wegener's personal conduct violated Plaintiffs' Due Process rights through training and supervision. Sheriff Wegener's lack of personal involvement and affirmative conduct through the eviction necessitates the conclusion that he did not commit a constitutional rights violation.

**B.     Defendant Sheriff Wegener is Entitled to Summary Judgment on Claim 1: Fourteenth Amendment Due Process based on "Danger Creation."**

        1.   <u>Burden of Proof and Elements:</u>

Plaintiffs bear the burden of proving, by a preponderance of the evidence, each of the following elements: (1) the Plaintiff was a member of a limited and specifically definable group; (2) Defendant's conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm; (3) the risk was obvious or known; (4) Defendant acted recklessly in conscious disregard of that risk; (5) such conduct, when viewed in total, is conscience shocking; and (6) Defendant created the danger or increased the Plaintiff's vulnerability to the danger in some way.  *Gray*, 672 F.3d at 920.

        2.   <u>Elements that Plaintiffs Cannot Prove:</u>

        **a.  Element 2: Sheriff Wegener's Affirmative Conduct Did Not Create a "Substantial Risk of Serious, Immediate, and Proximate Harm."**

Plaintiffs cannot prove that Defendant Wegener's limited role put Plaintiffs at substantial risk of serious, immediate, and proximate harm.  Sheriff Wegener did not participate in planning the eviction.  Ex. D, 124:8-125:12; Ex. A, 131:23-132:18; Ex. E, 175:15-21.  Although Sheriff Wegener was present briefly while on his way to a Denver meeting, he did not significantly participate in a pre-eviction briefing held at the Sheriff's Office substation on the morning of February 24, 2016.  Ex. D, 110:13-25; Ex. A, 131:12-132:18; Ex. E, at 174:7-17; 175:15-21.  The briefing and planning was led by Captain Hancock.  ~~*Id.*~~ Ex. D, at 122:9-12; 122:23-123:3; Ex. C, at 138:20-139:17.

Sheriff Wegener did not participate, nor did officers expect him to participate, in the eviction.  **Ex. D**, at 113:7-14; **Ex F**, at 7:8-12 (Sheriff Wegener announcing over radio he would

be "out of the county"); **Ex. C**, at 221:6-10; **Ex. E**, at 174:7-16, 179:23-180:4.  Sheriff Wegener arrived after the eviction was well underway and, upon his arrival, saw the officers gathered and stacked "up by the door" of the residence.  **Ex. D**, 193:17-21.  Sheriff Wegener remained by his vehicle parked approximately 50 to 75 yards from the house.  *Id.* at 190:5-13, 194:5-13, 204:10-18; 228:6-229:4.  Sheriff Wegener did not have an opportunity to personally observe Martin Wirth.  *See* **Ex. F** at 14:25-15:1; 15:21-22.  He was not present at the scene when Mr. Wirth came out on the porch.  **Ex. D**, at 228:12-14.  Other than what he heard over the radio, Sheriff Wegener had no information regarding Wirth's interactions with the officers, Wirth's demeanor, responses to officers' commands, or what was being said through the door between Wirth and the officers after Wirth had returned inside.  *Id.*

Plaintiffs understood that Captain Hancock—not Sheriff Wegener—was the officer in charge of the eviction, including after Sheriff Wegener's arrival.  **Ex. A** at 128:6-10, 135:1-11; **Ex. E** at 156:24-157:8, 216:21-24; **Ex. D** at 124:8-125:12, 199:24-200:9, 200:4-9, 239:17-24; **Ex. C** at 90:9-18; 139:8-10, 245:7-11.  Sheriff Wegener did not order officers to "breach" the residence; the order came from Captain Hancock.  **Ex. A** at 216:5-217:6; **Ex. E** at 216:14-22, 225:8-22; **Ex. F**, at 16:9, 17:8-13.  The sum of Sheriff Wegener's conduct boils down to his acknowledgement of Captain Hancock's order when Sheriff Wegener radioed, "Copy, breaching the door"— language understood as an acknowledgment of the preceding radio transmission, not an affirmative order or grant of permission.  **Ex. A** at 216:19-217:6; Ex. E at 225:8-14.

Defendant Wegener anticipates that Plaintiffs will argue he should have "first elect[ed] to talk the issues out with Mr. Wirth . . . ." *See* Am. Compl. [Doc. #32] ¶ 29.  The dispatch transcript demonstrates that Sheriff Wegener urged contacting Martin Wirth to "get his attention at the door."

**Ex. F** at 16:24-25.  He was told that attempts had been made.  *See* Ex. F, at 17:1-2.  Not 'talking the issues out' is not a basis for imposing individual liability under 42 U.S.C. § 1983.  "[F]ailure to act, even in the face of a known risk, is insufficient" to establish a defendant's personal liability under Section 1983.  *Briggs v. Johnson*, 274 F. App'x 730, 734 (10th Cir. 2008); *see also Robbins v. Okla.*, 519 F.3d 1242, 1251-52 (10th Cir. 2008) ("Plaintiffs therefore may not bring a claim of danger creation based on the state's failure to revoke [a daycare facility's] license.").  Sheriff Wegener's acts or inaction, given the circumstances, cannot be the basis of liability under Section 1983.

### b.  Element 3:  The Risk was Not Obvious or Known.

Plaintiffs cannot prove that Sheriff Wegener knew of the risk that Martin Wirth would ambush and open fire upon officers after they entered the residence, or that such a risk was obvious.  Although Mr. Wirth made threatening statements in the past, there is no record of Martin Wirth acting out upon his threats and actually being violent.  Martin Wirth had been previously evicted in 2014 and, at that eviction, Wirth peaceably left the premises without law enforcement intervention.   **Ex. D** 106:5-9, 37:22-38:1; **Ex. C** at 222:21-223:3; *see also* Def. Hancock's Chronological Summary of Facts ("CSOF"), ¶ 1.  On January 20, 2016, Mr. Wirth verbally threatened to shoot law enforcement officers after a State Farm insurance agent refused to reinstate his driver's insurance.  *See* Def. Hancock's CSOF, ¶ 2.  Between January 20, 2016 and the eviction, Mr. Wirth did not engage in any violent acts that would signal to law enforcement that he would immediately shoot officers who entered the home.   *See* **Ex. A**, 276:1-278:4, 291:14-292:22.  Despite Mr. Wirth's previous verbal threats, Wirth had never attempted to physically and violently act upon those threats prior to the eviction.

Sheriff Wegener acknowledges that a neighbor of Martin Wirth—Rich Gabrish—indicated to the Colorado Bureau of Investigation that he had called Sheriff Wegener in 2014, and reported verbal threats made by Mr. Wirth against law enforcement. Although the call may have occurred two years prior, Sheriff Wegener has no recollection of it, nor was he aware or thinking of such information on the day of the eviction. *See* **Ex. D**, at 95:13-96:14, 97:15-98:19.

Sheriff Wegener's arrival after the events had begun to unfold meant he never had the benefit of observing Wirth, hearing verbal exchanges between the officers and Mr. Wirth, or observing Wirth's demeanor. **Ex. D** at 187:14-22; 228:12-14. Officers were already stacked "up by the door" when Sheriff Wegener arrived, and it was reasonable for Sheriff Wegener to think the situation was assessed and the deputies were "up by the door" for a legitimate law enforcement reason. **Ex. D** 193:17-21; *see White*, 137 S. Ct. at 552 (commenting that an officer who arrives late to an ongoing police action is not required to second-guess the earlier steps already taken by his or her fellow officers). Sheriff Wegener justifiably relied upon the judgment and abilities of the experienced officers with "boots-on-the-ground" from the beginning. There was no reason for Sheriff Wegener to know Captain Hancock's decision-making would result in the violence inflicted by Wirth in the ambush that followed.

### c.   Element 4:  Sheriff Wegener Was Not Reckless.

Plaintiffs are unable to prove that Defendant Wegener acted recklessly, in conscious disregard of the risk that Martin Wirth would open fire upon the officers.  A constitutional violation must be predicated upon either: (1) an intent to harm; or (2) an intent to place a person unreasonably at risk of harm.  *Uhlrig*, 64 F.3d at 573.  Plaintiffs do not believe that Sheriff Wegener had any intent to harm Plaintiffs, or that they be harmed.  *See* **Ex. G**, 151:15-24; **Ex. A** at 217:7-21; **Ex. E** at 248:12-23, 249:1-4.

A state actor may be deemed reckless—the second form of intent—only when the individual "was aware of a known or obvious risk that is so great it was highly probable that serious harm would follow, and he or she proceeded in conscious and unreasonable disregard of those consequences." *Id.*  Sheriff Wegener—to the minimal extent he was involved—was not reckless. He arrived late at the scene of a dynamic law enforcement situation, of which he had no role in planning or executing.  He was without any firsthand knowledge of what had transpired.  Captain Hancock, who had been there from the beginning and was the most senior tactical officer, advised that the officers were going "through the door."  **Ex. F**, 16:9, 16:19-20, 17:11-12.  Justifiably relying on Captain Hancock's assessment, Sheriff Wegener acknowledged the decision.  *See White*, 137 S. Ct. at 552 ("Clearly established federal law does not prohibit a reasonable officer who arrives late to an ongoing police action . . . from assuming that proper procedures . . . have already been followed."). It was reasonable and prudent to rely upon Captain Hancock—his most experienced tactical officer and the senior officer in charge of the eviction—to make the judgment call at the scene.  Sheriff Wegener was not the decision-maker.  He did not set the events in motion. He was not reckless at any time.

### d.   Element 5:  Sheriff Wegener's Conduct Does not "Shock the Conscience."

Plaintiffs cannot prove that Sheriff Wegener's conduct, considering the circumstances, was "conscience shocking."  "[T]he standard for judging a substantive due process claim is whether the challenged government action would 'shock the conscience' of federal judges." *Uhlrig*, 64 F.3d at 573 (quoting *Collins*, 503 U.S. at 126).  A plaintiff must "demonstrate a degree of outrageousness and a magnitude of potential harm that is truly conscience shocking." *Id.* at 574. It stretches the imagination to consider Sheriff Wegener's minimal role, in a tense and rapidly developing situation—in saying, "Copy, breaching the door" to acknowledge Captain Hancock's decision at the scene—as being conscience shocking. "[W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates 'the large concerns of the governors and the governed.'" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998).

Sheriff Wegener's actions are not reckless, much less conscience shocking.  As discussed, he was not present at crucial junctures of decision-making.  He had a limited participatory role, possessed limited information about what had transpired prior to his arrival at the scene, and was presented with the tactical commanding officer's decision to enter the residence within thirty seconds of his approach on the driveway.  It was in this context that Sheriff Wegener radioed acknowledgement of Hancock's decision, "Copy, breaching the door." **Ex. F**, 17:13.  This statement is not conscience shocking.  Rather, the catalyst of the harm, Martin Wirth, and his violent acts are conscience shocking.

Sheriff Wegener had no reason to doubt or question Captain Hancock's tactical judgment or the experience and training of the other officers at the scene.  *See* **Ex. C** at 20:20-22:4, 29:14-

21; 29:14-21 (Hancock's experience and training); **Ex. A** at 71:22-72:18, 145:9-146:5, 254:3-14, 279:25-280:9; Ex. **Ex. D** at 315:14-16; **Ex. C** at 143:11-15 (Martin's experience and training); **Ex. E** at 60:19-61:25 (Threlkel's experience and training).  None of the officers, including Plaintiffs, verbalized a concern regarding the course of action to enter the residence.  *See* **Ex. A** at 187:18-25, 205:21-206:4, 232:13-24, 299:18-300:23, 306:4-19; **Ex. C** at 40:1-23; 41:19-43:2; **Ex. E** at 212:13-18, 299:1-20, 300:7-302:7.  Sheriff Wegener had no reason to doubt Plaintiffs' training, experience, preparation, and tactical judgment.  **Ex. D** at 308:17-309:10, 315:3-16; *see also* **Ex. A** at 146:6-9.  Sheriff Wegener's conduct was reasonable under the circumstances and based on what he knew at the time, and certainly was not conscience shocking.  *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (the reasonableness of a law enforcement officer's actions "must be judged from the perspective of a reasonable law enforcement officer on the scene, not with the 20/20 vision of hindsight"); *City and Cnty. of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1775 (2015) ("The Constitution is not blind to the fact that police officers are often forced to make split-second judgments.").

## C.  Defendant PCSO and Sheriff Wegener in His Official Capacity are Entitled to Summary Judgment on Claim 1: Municipal Liability based on "Danger Creation." [2]

### 1.  Burden of Proof and Elements:

To sustain a claim under 42 U.S.C. § 1983 against a local government entity, the plaintiff must first establish, as a threshold matter, an underlying constitutional violation.  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) ("*Bryan Cnty.*").  If an underlying

---

[2] A suit against a sheriff in his official capacity is equivalent to an action against the government entity for whom the sheriff works.  *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998).  This Motion accordingly treats Plaintiffs' claims against Defendant Wegener in his official capacity as equivalent to those asserted against Defendant PCSO.

constitutional violation is established, the plaintiff then bears the burden of proving, by a preponderance of the evidence, (1) the existence of a governmental policy or custom, and (2) a direct and causal link between the policy or custom and the alleged constitutional violation. *Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996). To establish the requisite causal link, the plaintiff must demonstrate that "deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bryan Cnty.*, 520 U.S. at 400 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

2. <u>Elements that Plaintiffs Cannot Prove:</u>

Plaintiffs cannot prove each element of their "danger creation" claim against Defendant PCSO. As already set forth above in Sections A and B, Plaintiffs cannot demonstrate a constitutional violation. No law or facts establish that Captain Hancock's decision to enter the residence while Martin Wirth was inside is a violation of Plaintiffs' substantive Due Process rights under the Fourteenth Amendment. Nor does an employer have a constitutional duty under the substantive component of the Due Process Clause to "provide its employees with a safe working environment." *Collins*, 503 U.S. at 126. Law enforcement is fraught with inherent and often unpredictable risks and dangers. *See* **Ex. G** at 69:24-70:2; **Ex. A** at 258:19-259:4; **Ex. E** at 138:14-24. The Constitution does not provide a guarantee of safe outcomes. *Collins*, 503 U.S. at 126.; *Moore v. Guthrie*, 438 F.3d 1036 (10th Cir. 2006) (following *Collins*, holding that law enforcement officer injured during training exercise did not have a Due Process right to safe working conditions); *Uhlrig v. Harder*, 64 F.3d 657, 573 (10th Cir. 1995); *cf. Moriarty v. Bd. of Cnty. Comm'rs for Cnty. of Sandoval*, 931 F.Supp.2d 1142, 1165 (D.N.M. 2013) (acknowledging that school resource officer who was assigned to track a serial burglar, which resulted in injuries to the

school resource officer and death of fellow officer, did not have a Fourteenth Amendment Due Process right to "a safe working environment"); *Estate of Phillips v. Dist. of Columbia*, 455 F.3d 397, 402 (D.C. Cir. 2006) (stating the Fifth Amendment's Due Process Clause did not protect D.C. firefighters from the risks "inherent in their profession," even where a supervisor's decision may have increased the firefighters' exposure to the risks).  The decision to breach the residence during the eviction was a reasonable tactical judgment call, whether right or wrong in hindsight, not a violation of constitutional rights.

Second, there is no existing formal PCSO regulation or policy statement in the Park County Sheriff's Office Policy and Procedure Manual that applied to the circumstances of the Wirth eviction.  Plaintiffs do not cite any specific policy.  In deposition testimony, no one testified that PCSO's policies and procedures were inadequate; concerns were centered on how the policies and procedures were implemented.  **Ex. A**, 244:19-245:11; **Ex. E**, 326:12-327:10.

Nor is there an "informal custom" of the Park County Sheriff's Office that amounted to a widespread practice regarding civil evictions or breach situations.  No decision made regarding the Wirth eviction created a final "policy" concerning evictions.  *See Starrett v. Wadley*, 876 F.2d 808, 818 (10th Cir. 1989) ("The mere exercise of discretion by a government official is not sufficient, by itself, to generate municipal liability"); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986) ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion") (internal citations omitted).  To allow a single discretionary tactical decision—or a brief radio transmission such as "Copy, breaching the door"—to be considered an "official policy" would expose law enforcement agencies to potentially unlimited

25

liability for the decisions of its tactical officers and similar communications made by superior officers in the chain of command—effectively converting the basis of municipal liability into *respondeat superior*, a theory rejected under Section 1983. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-22 (1988) (citing *Monell*, 436 U.S. at 694)).  There is no evidence of "deliberate indifference" to the training needs of Plaintiffs or Captain Hancock which would constitute a deliberately indifferent "policy" of PCSO.  No "policy or custom" exists upon which to base the liability of PCSO or Sheriff Wegener in his official capacity in Plaintiffs' first claim for relief.

Third, without identifying any "policy" or "custom" speaking to the circumstances of the Wirth eviction, Plaintiffs cannot prove that a policy or custom of the Park County Sheriff's Office was the "moving force" of Plaintiffs' alleged constitutional injuries.

## D. Defendant Sheriff Wegener is Entitled to Summary Judgment on Claim 2: Deliberately Indifferent Training and Supervision.

### 1. Burden of Proof and Elements:

When asserted against a supervisor-defendant individually, a claim of deliberately indifferent training and supervision is construed as a supervisory liability claim implicating a supervisor's implementation of a policy. *Kemp v. Lawyer*, 846 F. Supp. 2d 1170, 1174-75 (D. Colo. 2012).  Plaintiffs bear the burden of proving, by a preponderance of the evidence: (1) an underlying violation of Plaintiffs' constitutional rights; (2) that Defendant Wegener's personal involvement caused the misconduct complained of; and (3) Defendant Wegener acted knowingly or with deliberate indifference that a constitutional violation of Plaintiffs' legal rights would occur. *Id.* at 1175 (citing *Dodds v. Richardson*, 614 F.3d 1185, 1195-96 (10th Cir. 2010)).  "Failure to 'train' and 'failure to supervise' require proof of the same elements." *Rehberg v. City of Pueblo*, 2012 WL 1326575 *4 (D. Colo. 2012) (citations omitted).

26

2.   <u>Elements that Plaintiffs Cannot Prove</u>**:**

Plaintiffs will be unable to prove each element.  Plaintiffs cannot prove a violation of Plaintiffs' Fourteenth Amendment rights against Sheriff Wegener under the "danger creation" theory, as explained in Section B.  The same conclusion is true for Plaintiffs' claim regarding training and supervision.  There is no evidence that Plaintiffs or Captain Hancock were inadequately trained or supervised.  Nor is there any evidence that, through Sheriff Wegener's personal conduct, Plaintiffs were deprived of a constitutional right by a lack of training or supervision, or that Sheriff Wegener made any training or supervision decisions relating to the eviction.  Rather, the evidence shows that Plaintiffs and Captain Hancock were experienced, tactically trained, and SWAT team members and leaders.  *See* Def. SOF ¶¶ 2, 4, ~~22-25~~ <u>21-25</u>.

Additionally, there is no support for the idea that Sheriff Wegener was "deliberately indifferent" to Plaintiffs' constitutional rights in regard to their training and supervision.  Plaintiffs have alleged that "Sheriff Wegener . . . with actual knowledge of the obvious need for additional supervision including monitoring Captain Hancock . . . and with deliberate indifference, did not reasonably provide such sufficient supervision including monitoring Captain Hancock . . . ."  Am. Compl. ¶ 80.  This statement is conclusory, vague, and unsupported by the record.  PCSO's most experienced tactical officer, Captain Hancock, led the eviction.  Def. SOF ¶ 2.  Even if the unidentified deficiencies in training or supervision existed, there is no evidence they were the result of Sheriff Wegener's deliberate indifference to the need.  To the contrary, the record shows Sheriff Wegener exercised reasonable care for his officers by not continuing his trip to Denver but going to the eviction site, Def. SOF ¶¶ 9-11; by having his most experienced tactical officer in charge, Def. SOF ¶¶ ~~26~~ <u>2, 4</u>; and suggesting the officers seek Mr. Wirth's attention at the door, **Ex. F**,

16:24-25.

Plaintiffs will argue that a different tactical decision should have been made to retreat and not enter the residence, and that a SWAT tactical entry team with specialized equipment should have been called out and utilized. *See* Am. Compl. ¶¶ 38, 41. Such arguments represent alternative *post hoc* tactical outcomes, not courses of "training" or "supervision" that are causally related the Plaintiffs' injuries. *Carr v. Castle*, 337 F.3d 1221, 1231 (10th Cir. 2003) (rejecting the "post hoc, ergo propter hoc fallacy" of evaluating the adequacy of an officer's training in hindsight based upon a tragic outcome, "rather than providing any evidence of how the training (or lack thereof) actually resulted" in the constitutional violation). Plaintiffs never requested additional training or supervision, at any point in their career nor prior to the eviction. Further, Plaintiffs had multiple opportunities during the pre-eviction briefing, during a pre-eviction gathering at the Platte Canyon Fire Department, and up to the moment of entry to communicate concerns about the course of action, and Plaintiffs never did so. **Ex. A** at 143:8-24, 150:2-151:2, 187:18-25, 205:24-206:4, 232:13-19, 290:22-291:8, 299:18-300:23; **Ex. E** at 299:1-20, 300:7-302:7; **Ex. F** at 14:10-17:18 (no concerns communicated by Plaintiffs over radio). None of Plaintiffs' sparse and conclusory allegations or facts in the record indicate an "obvious need" for training, what additional training was needed, or how the alleged lack of that training was the motivating cause of Plaintiffs' alleged constitutional injuries.

**E.      Defendant PCSO and Sheriff Wegener in His Official Capacity are Entitled to Summary Judgment on Claim 2: Deliberately Indifferent Training and Supervision.**

1.   Burden of Proof and Elements:

When a plaintiff's theory of municipal liability is premised upon a governmental entity's alleged failure to train its law enforcement officers, the plaintiff bears the burden of proving, by a

preponderance of the evidence, all of the following elements: (1) the training was in fact inadequate; (2) the defendants committed an underlying constitutional violation; (3) the violation arose under circumstances that constitute a usual and recurring situation; (4) the inadequate training demonstrates a deliberate indifference on the part of the governmental entity toward persons with whom the officers come in contact; and (5) there is a direct and causal link between the inadequate training and the alleged constitutional deprivation. *Carr*, 337 F.3d at 1228. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

      2.   Elements that Plaintiffs Cannot Prove**:**

Plaintiffs' claim for deliberately indifferent training and supervision against the Park County Sheriff's Office fails on all elements. First, Plaintiffs fail to identify any specific PCSO training policies, and they fail to identify any specific deficiencies in training. There is no evidence the training and supervision provided to either Captain Hancock or to Plaintiffs was inadequate in a "constitutional sense." *See Carr*, 337 F.3d at 1229. Captain Hancock was the most experienced in command and SWAT tactics, and Sheriff Wegener justifiably had confidence in his abilities and decision-making. *See* **Ex. C** at 20:20-22, 21:8-24, 23:2-21, 34:16-21; **Ex. D** at 144:24-145:2, 219:18-20, 308:17-309:10. Plaintiffs do not identify what aspect of Captain Hancock's training was deficient. *See* Def. Hancock's CSOF ¶ 3.

Plaintiffs were also experienced officers. *See Def.* SOF ¶¶ ~~22-25~~ 21-25. All PCSO officers are offered training in various law enforcement subjects once a month. **Ex. C** at 23:8-21. Training on breaching was offered at least once a year. *Id.* at 23:10-12. "Breaching" is a patrol tactic that virtually every patrol officer is trained to do. *Id.* at 38:16-22. Plaintiff Martin was SWAT-trained

and a team leader.  **Ex. A** at 279:25-280:7; **Ex. C** at 143:11-15; **Ex. D** at 315:14-16.  He assisted in developing and providing training for PCSO officers, including entries into occupied structures. **Ex. A**, at 254:3-14.  He continued to receive additional SWAT-related training through Park County.  *Id.* at 71:22-72:18; 280:13-19.  Plaintiff Threlkel was also trained in SWAT tactics, and had completed over one hundred hours of SWAT training prior to the eviction.  **Ex. E** at 60:19-61:25.  Thus, the eviction operation was staffed with some of PCSO's most experienced and well-trained tactical officers.  *See* **Ex. A** at 145:15-146:5.  Plaintiffs acknowledge they had no objections to PCSO's policies and procedures.  **Ex. A**, 244:19-245:11; **Ex. E**, 326:12-327:10.  Plaintiffs do not point to any specific deficiency in their training or supervision regarding the eviction, much less a deficiency great enough to result in the alleged constitutional violation of breaching the residence.

Second, as has been discussed in Sections A and B above, Plaintiffs fail to establish an underlying constitutional violation.

Third, Plaintiffs cannot demonstrate that the circumstances of the Wirth eviction were "usual and recurring" in nature, so as to put PCSO on notice of the need for more training "in specific skills needed to handle recurring situations."  *Carr*, 337 F.3d at 1229.  Responding to an evictee who does not come out of the house by calling out a SWAT team is not the type of "usual and recurring" situation for which additional training would foreseeably be required.  There is no evidence it had ever occurred before in an eviction context.

Fourth, Plaintiffs cannot prove that either Sheriff Wegener or Captain Hancock were "deliberately indifferent" to the training of Captain Hancock, Plaintiffs, or other officers.  To establish deliberate indifference, Plaintiffs must demonstrate that "'the need for more or different

training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the governmental entity can reasonably be said to have been deliberately indifferent to the need.'" *Brown v. Gray*, 227 F.3d 1278, 1288 (10th Cir. 2000) (quoting *Canton*, 489 U.S. at 390). However, the fourth element requires proof that Defendants were deliberately indifferent, not to Plaintiffs as the recipients of training, but 'toward the persons with whom Plaintiffs come in contact.' *Carr*, 337 F.3d at 1228. Plaintiffs have not alleged any harm to individuals affected by the alleged lack of training, other than Plaintiffs themselves. This is a fundamental flaw, and misconstrues the focus of the claim. The lack of evidence of harm to any other individuals resulting from the alleged training inadequacies shows the lack of support for the claim. There is no evidence of an "obvious need" for more or different training. Even if Plaintiffs needed more or different training, the fact "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [Sheriff's Office], for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390-91. Nor is there any evidence of a "program-wide inadequacy in training," and consequently any shortfall in an individual officer's training "can only be classified as negligence on the part of the municipal defendant," which is insufficient for liability under Section 1983 to attach. *Estate of Reat v. Rodriguez*, 2014 WL 4358333, at *2 (D. Colo. 2014) (quoting *Blankenhorn v. City of Orange*, 485 F.3d 463, 484-85 (9th Cir. 2007)).

Finally, Plaintiffs cannot satisfy the strict requirements for establishing causation between the alleged lack of training and supervision and Plaintiffs' alleged injuries. A "mere probability" that inadequate training or supervision will cause any officer to inflict any constitutional injury is insufficient; a plaintiff must show "*this* officer was highly likely to inflict the *particular* injury

suffered by the plaintiff." *Bryan Cnty.*, 520 U.S. at 412 (emphases in original). Plaintiffs are required to draw a direct and close causal connection between the alleged deficiencies in their training/supervision and their ultimate injuries, and they cannot do so. *Id.*; *Canton*, 489 U.S. at 391. It is not enough for Plaintiffs to vaguely assert that PCSO was responsible for existing law enforcement training programs. *Id.* at 389. It also does not suffice to merely prove their injuries "could have been" avoided with "better or more training." *Id.* at 391. "Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal." *Id.*

Plaintiffs have alleged that "a tactical decision should have been made to order the Sheriff [sic] Deputies to retreat back to a safe position and not enter the residence. At that point, SWAT should have been called and activated." Am. Compl. ¶ 80. Simply identifying tactical alternatives in hindsight is not a permissible basis for municipal liability under Section 1983. *Carr*, 337 F.3d at 1231; *Moore*, 438 F.3d at 1041 ("Plaintiff is asking us to play Monday-morning quarterback about a decision . . . that seems, at most, negligent."). Further, as Captain Hancock pointed out, a viable alternative is to enter with speed to preclude a person from fortifying. *See* CSOF ¶ 13. "[P]lainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [entity] liable." *Id.* Plaintiffs' generalized suggestions that adopting more or better policies in an effort to create an overall safer law enforcement agency does not meet the Supreme Court's stringent requirements for municipal liability. What *could* have happened or *should* have happened are not material "facts" showing a causal connection between an alleged lack of training or supervision and Plaintiffs' injuries.

Plaintiffs fail to establish that additional training or supervision provided to either them or to Captain Hancock would have prevented their injuries, warranting summary judgment for PCSO.

## IV.   CONCLUSION

Summary judgment should be entered in favor of Defendant Sheriff Wegener and Defendant PCSO.  There is no question:  the rights alleged are not "clearly established." The contours of the right that Plaintiffs allege have never been defined in a decision of this Circuit or the U.S. Supreme Court.   While Plaintiffs attempt to assert rights under the Fourteenth Amendment, there is no recognized substantive Due Process right to a safe work environment. The lack of any precedent on point, particularized to the facts of this case, requires summary judgment in favor of Defendant Wegener and PCSO.  Plaintiffs also cannot prove the elements of a danger creation claim, particularly considering his minimal role in the events at issue are not a basis for individual liability.  Defendant Sheriff Wegener has qualified immunity and is entitled to summary judgment in his individual capacity.

Summary judgment should also be entered in favor of Defendant PCSO and Sheriff Wegener in his official capacity.  No policy or custom exists that was the moving force of the breach of Martin Wirth's residence.  Defendants provided adequate training and supervision, were not on notice that training or supervision was inadequate, and they were not deliberately indifferent towards Plaintiffs' constitutional rights with regards to training or supervision at any time.  For all of the reasons argued in this Motion, summary judgment should be entered in favor of these Defendants pursuant to Fed. R. Civ. P. 56(c).

**DATED** this 23rd day of March, 2018.

Respectfully Submitted,


*/s/ Timothy P. Schimberg*
Timothy P. Schimberg, Atty. No. 10686
Fowler, Schimberg, Flanagan & McLetchie, P.C.
1640 Grant Street, Suite 300
Denver, Colorado  80203
Tel: 303-298-8603
Fax: 303-298-8748
t_schimberg@fsf-law.com
*Attorney for Defendants Park County Sheriff's*
*Office and Sheriff Fred Wegener*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2018, I electronically filed the foregoing **MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(c) BY DEFENDANT PARK COUNTY SHERIFF'S OFFICE AND SHERIFF FRED WEGENER** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Reid J. Elkus
Donald C. Sisson
Lucas Lorenz
ELKUS & SISSON, P.C.
501 S. Cherry Street, Suite 920
Denver, Colorado 80246
relkus@elkusandsisson.com
dsisson@elkusandsisson.com
llorenz@elkusandsisson.com
*Attorneys for Plaintiffs*

David J. Goldfarb, Esq.
Josh A. Marks, Esq.
Berg, Hill, Greenleaf & Ruscitti
1712 Pearl Street
Boulder, CO  80302
dgoldfarb@bhgrlaw.com
jam@bhgrlaw.com
*Attorneys for Defendant Mark Hancock*

*/s/ Eden R. Rolland*
Eden Rolland