# PARK COUNTY SHERIFF'S OFFICE
# POLICY AND PROCEDURE MANUAL

| *Effective Date*: 01-23-07 | *Approval*: | *Number*: 510 | |
|---|---|---|---|
| *Subject*: **HOSTAGE/BARRICADED SUBJECT INCIDENTS** | | | |
| *Reference*: | | *Standard*: | |
| *Chapter*: V | | *Reevaluation Date*: | *No. Pages* 6 |

**I.  PURPOSE:**

The purpose of this policy is to provide general guidelines for handling hostage/barricaded subject situations.

**II.  DEFINITIONS:**

BARRICADED SUBJECT:  Any individual who is reasonably believed to be a threat to commit Serious bodily injury or death to hostages, officers or others in the community and who is in a stronghold position.

HOSTAGE:  Any person held by another against his will by force or threat of force, expressed or implied.

**III.  POLICY:**

In hostage/barricaded subject situations it shall be the policy of the Park County Sheriff's Office to consider the lives of the hostages, civilians and officers involved to be of the utmost importance; whenever possible, to enhance the prospects of peacefully resolving the incident through communication with the suspect; whenever possible, to develop and maintain the ability to use alternative approaches to resolve the incident should communications fail; and in hostage situations, to make every reasonable effort to effect the safe release of the hostages.

**IV.  PROCEDURES:**

A.  PATROL DEPUTIES

Patrol Deputies confronting hostage/barricaded subject incidents shall not initiate tactical actions other that those necessary to protect the lives and safety of themselves or others consistent with Park County Sheriff's Office's use of force policy.  Officers shall then:

1.  Notify a supervisory officer of the incident and circumstances;

2.  Contain and isolate the incident scene, establishing an inner containment perimeter to provide a reasonable degree of safety while maintaining contact with the incident scene and, as time and resources permit, establish an outer containment perimeter to control pedestrian and vehicular traffic into the area; and

3.  Whenever possible, evacuate occupants of affected residences and businesses to a

EXHIBIT 7

point beyond the perimeter.

B.   OFFICER IN COMMAND (OIC)

The ranking officer at the scene shall be in command until specifically relieved by a superior.  The OIC shall:

1.  Inform the watch commander about the nature and circumstances surrounding the incident;

2.  Delegate the tactical mission to the OIC of the tactical response team;

3.  Ensure development of a communications/negotiations process and an emergency response team reaction;

4.  Ensure establishment of an inner and outer perimeter, command post, tactical operations center, negotiations center and a staging area for officers and others arriving for assignment;

5.  Assign a press center and an officer for press liaison;

6.  Ensure that responsibility for traffic and crowd cool is established, and that routes for emergency vehicles have been designated;

7.  Make provisions for recording personnel assignments and developing a chronological record of events at the command center and tactical operations center;

8.  Ensure that necessary equipment from the fire department is made available at the staging area together with any other units or equipment such as canine teams, aviation or marine units; and

9.  Ensure that emergency medical services are available at the site.

C.   TACTICAL RESPONSE TEAM COMMANDER

The commander of the tactical response team shall:

1.  Assist the OIC is assessing the situation and formulate and provide the OIC with recommended tactical alternatives should communications with the subject fail to resolve the incident;

2.  Determine equipment needs and assign personnel to control and contain the inner perimeter;

3.  Designate marksmen and entry team as necessary;

4.  Ensure that personnel manning the inner perimeter are provided with periodic relief by appropriate tactical response team members;

5.  Prepare appropriate logistical plans to include diagrams of the location in

EXHIBIT 7

Policy 510

question;

   6.   Ensure the establishment of a tactical operations center if necessary; and

   7.   Maintain contact with and keep the command post informed of all developments and operations.

D.   HOSTAGE COMMUNICATION TEAM:

   1.   Provide any requested assistance to the OIC

   2.   Provide trained primary and secondary negotiators and, as available and necessary, a negotiations investigator;

   3.   Obtain all pertinent information about the hostage taker, the hostages, hostage site and other barricaded subjects;

   4.   Debrief hostages following the incident.

E.   PSYCHOLOGICAL SERVICES

Shall serve as a resource to the hostage communications team and will:

   1.   Monitor communications between the negotiators and subjects and provide negotiators with assessments of effectiveness, recommended strategies and other relevant information;

   2.   Assist in interviewing witnesses and debriefing hostages; and

   3.   Provide professional assistance to hostages, witnesses and others as may be necessary.

F.   TACTICAL CONSIDERATIONS:

   1.   Determine probable location of suspect within the structure.

   2.   Determine access routes & advise concerned units.

   3.   Determine the location of all personnel assigned to the operation and maintain a roster.

   4.   Upon arrival of SWAT, ensure the unnecessary personnel leave the area.

G.   MAINTAIN CONTROL OF RESPONDING PERSONNEL & ENSURE THAT:

   1.   All personnel report to C.P. prior to deploying.

   2.   All personnel are adequately briefed regarding tactical problem, assignment and unit designation.

   3.   Assigned personnel have communications capability.

EXHIBIT 7

Policy 510

4.   Weapons fire control is maintained.

5.   Establish alternate routes for civilian traffic.

6.   Establish telephonic communications with suspect.   Every effort must be expended to obtain the voluntary surrender of the suspect.

7.   Determine identity and objective of suspects.

8.   If suspect's identity can be ascertained, check record through station, departmental and intelligence resources.

9.   Detain all persons who can supply pertinent information, i.e., relatives, friends, witnesses, and ensure their safety.  Do not locate them in the command post.

10. Thoroughly brief all relief personnel.

H.    POST OPERATION CONSIDERATIONS:

1.   Obtain Statement of Facts, Chemical Agents Use Form, and any other applicable information from SWAT representative, and ensure that;

2.   First report is taken by handling unit;

3.   All pertinent information should be reported the County Commissioners.

4.   Memo to the Division Commander is initiated.

5.   Account for all departmental equipment, and ensure that it is services and returned to its storage place.

6.   Return borrowed equipment.

7.   Secure location of occurrence for preservation of evidence, etc.

8.   Release premises to owner or responsible party.

9.   Supervise clean up of areas utilized by Department personnel.

10. Provide follow-up service to area residents relative to damaged property, claims against the county, etc.

11. Determine who assisted departmental personnel, and ensure that letters of appreciation are prepared.

12. As soon as possible, critique the operation with involved personnel, and submit a memo to the unit commander relative to findings.

EXHIBIT 7

Policy 510

I.   SUGGESTED    GUIDELINES    FOR    RESOLVING    BARRICADED
     SUSPECT/HOSTAGE SITUATIONS:

The following procedures can be extremely helpful in achieving operational success at
the scene of a barricaded suspect/hostage situation:

1.   If the department staff has a mutual aid agreement with SWAT-Hostage
     Negotiation Teams, alert them upon learning of a barricaded suspect/hostage
     situation.  Once confirmation has been received from field units that a barricaded
     suspect/hostage situation in fact exists, request that a SWAT-Hostage Negotiation
     Team respond.

2.   Upon arrival at the scene of a barricaded suspect/hostage situation, establish an
     inner perimeter to contain the suspect and the location.  This should be done with
     a minimum of personnel, and they should have some type of radio
     communications.    Someone should assume command pending arrival of
     supervisory personnel.

3.   Establish an outer perimeter for traffic and crowd control.   Adjacent law
     enforcement agencies may be used for this purpose; and if there is a shortage of
     personnel, a fire engine or marked squad car can be used to block a street or
     intersection.

4.   Designate an arrest team to take charge of the suspect should he/she surrender.
     The arrest team should be prepared to take charge of any hostage the suspect
     releases.  SWAT and Negotiations personnel must take these hostages to a
     designated reception area for debriefing.

5.   Restrict a radio frequency.

6.   If necessary, request a helicopter.

7.   Establish a command post outside the suspect's line of fire and sight.  Obtain the
     use of one, and if possible two, telephones.   The command post should be
     sufficiently large to accommodate responding personnel and vehicles, including
     the SWAT team and fire/ambulance equipment.

8.   Determine if a crime has been committed and locate victims.  Obtain names,
     addresses and statements as soon as possible.

9.   Obtain the phone number of the location and where the phone is located within
     the structure.  Find out if the phone is cordless or not.

10.  Maintain a chronological log of all activities.

11.  Contact the suspect(s) by phone or P.A. system and attempt to get them to
     surrender.  Obtain their demands, but make no commitments.

12.  Evacuate surrounding buildings or residences, if this can be done safely.  Select a
     location where evacuees can go (coffee shop, Laundromat, motel, etc.) and advise

EXHIBIT 7

Policy 510

them when it is safe to return to their homes. Record the name and address of anyone who refuses to evacuate after being warned of the potential hazards.

13. Have an ambulance, fire department and paramedic unit standing by near the command post. Keep them advised of the situation.

14. Select a location to assemble responding press representatives and assign someone to brief and remain with them pending arrival of press liaison personnel.

15. If possible, obtain a drawing or floor plan of the location, including entrances, location of windows, inside and outside doors, access to the garage from inside the location, and any other information that might assist the SWAT-Hostage Negotiation Team.

16. A record check should be made and station files reviewed for criminal history record information or contacts with the suspect(s).

17. Try to persuade anyone with information about the suspect(s) (friends, relatives) to remain in the vicinity of the command post for possible questioning by SWAT team members or negotiators.

18. Have the first responding officers remain available at the command post to meet with SWAT team leader or his designate.

19. Do not allow the suspect(s) and hostage(s) to leave the location.

20. Do not allow friends, relatives or other interested persons to enter the location. They could become hostages. Allowing these persons to talk to the suspect(s) may cause severe reactions.

21. As field personnel are relieved of containment duties by SWAT team members, they should report to the command post for reassignment. Once the situation is concluded, prevent crowds from approaching the location until evidence has been gathered and the fire department has cleared the location of any residual chemical munitions.

22. The handling unit should obtain report information from the SWAT team commander, leader or designate.

23. Clean up the command post area and express appreciation to anyone who has assisted (neighbors, etc.)

24. Critique the operation with those involved, perhaps during a subsequent briefing session.

EXHIBIT 7